**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Case No. 24-60308-mmp** |
| **HILLTOP SPV, LLC** | § | |
| | § | **Chapter 11** |
| **DEBTOR.** | § | **(SUBCHAPTER V)** |

### MOTION TO RECHARACTERIZE, EQUITABLY SUBORDINATE, AND OBJECTION TO THE CLAIM OF SPOTSWOOD NATURAL RESOURCES, LLC

Monarch Midstream, LLC ("<u>Monarch</u>") creditor and party-in-interest in accordance with paragraph 9 of the Interim DIP Order,[1] hereby timely challenges Spotswood Natural Resources, LLC's claim ("<u>Spotswood</u>") and moves to (i) recharacterize Spotswood's claim as an equity interest under section 105 of the Bankruptcy Code;(ii) equitably subordinate Spotswood's claim to all unsecured claims against the Debtor under section 510(c) of the Bankruptcy Code; and (iii) objects to Spotswood's claim under section 502 of the Bankruptcy Code. In support thereof, Monarch respectfully states as follows:

### SUMMARY OF ARGUMENT

1.      Spotswood inequitably used its influence and control over the Debtor to (a) obtain secured liens on substantially all the Debtor's assets *for absolutely nothing in return*;[2] and (b) pay $2,500,000 of the Debtor's money to fellow insider Spotswood NR. Less than three years after these unjust acts occurred, the Debtor sought bankruptcy protection because it is unable to pay Monarch's rightfully obtained Judgment Lien of approximately $1.3 million.

---

[1] The period to challenge Spotswood secured claim expires ninety (90) days following the entry of the June 14, 2024 Interim DIP Order. *See* Dkt. No. 34.

[2] Monarch has asked whether Spotswood paid anything for the assigned Pre-Petition Loan, Spotswood refused to provide an answer. *See* **Exhibit A**, Response to Interrogatory No. 24.

2.     When Spotswood and Spotswood NR inequitably gained $2,500,000 and liens over substantially all of the Debtor's assets they were controlled by the same three members—**John Redmond, Doug Redmond, and CB Rowan**.

3.     In fact, the ownership structure of the entities was as follows at the time of the inequitable conduct:

| | |
|---|---|
| **Spotswood Natural Resources, LLC**<br>*Holder of liens on substantially of the Debtor's assets for no consideration.* | (a) John M. Redmond (94%)<br><br>(b) Doug Redmond (3%)<br><br>(c) CB Rowan (3%) |
| **Spotswood NR II, LLC**<br>*Recipient of $2,500,000 of Debtor's money in 2021 and 100% owner of Debtor.* | (a) John M. Redmond (94%)<br><br>(b) Doug Redmond (3%)<br><br>(c) CB Rowan (3%) |
| **Debtor** | 100% owned by Spotswood NR II, LLC; and managed by John M. Redmond. |

*See* **Exhibit A**, Responses to Interrogatories Nos. 16, 17.

4.     Even worse, the Pre-Petition Loan would have not been due until 2027 without Spotswood's intervention. *See* **Exhibit C**. In fact, Spotswood ensured its claim would be due and owing before the Debtor sought bankruptcy by sending a notice a default on March 26, 2024, and electing its default rate interest rate of 8% on April 11, 2024. *See* **Exhibit E**.

5.     In the notice, Spotswood claims the Debtor defaulted under the Pre-Petition Loan by not paying Monarch under the GGA. *See id.* However, the Debtor and Spotswood are effectively controlled by the same people—John Redmond, Doug Redmond, and CB Rowan— meaning the same people chose to not pay Monarch and then elected default under the Pre-Petition

#102579237v6

Loan to ensure that only Spotswood would recover in the bankruptcy. *See* **Exhibit E**, Dkt. No. 90 (Spotswood receiving $2.5 million for its Pre-Petition Loan claim under the Debtor's plan while unsecured creditors receive less than $50,000).

6.      Therefore, Spotswood's actions constitute a course of inequitable conduct that justifies equitably subordinating the claims filed in this bankruptcy to unsecured creditors pursuant to 11 U.S.C. § 510. Spotswood is an insider that used the Debtor as an instrumentality and alter ego for its own benefit. Namely, the individual members that make up the Debtor, Spotswood, and Spotswood NR—John Redmond, Doug Redmond, and CB Rowan—took advantage of Debtor's precarious financial position by inequitably modifying the Pre-Petition Loan to (i) allow Spotswood a security interest in substantially all of the Debtor's assets for no additional consideration; (ii) a $2,500,000 distribution of the Debtor's money to Spotswood NR; and (iii) ensuring its Spotswood claim was due and owing pre-petition.

7.      In the alternative, Spotswood's Pre-Petition Loan, serving as the basis for its Proof of Claim, was part of the package of agreements entered into on July 28, 2021, that should be recharacterized and treated for what they really were—a capital infusion and equity contribution into the Debtor. The following facts establish the true nature of the transaction and Spotswood should not be permitted to gain the advantages of a secured lender to the detriment of Monarch and other creditors for what amounts to an equity contribution that was not a true transaction for indebtedness: (a) Debtor was thinly or inadequately capitalized at the time of the Pre-Petition Loan; (b) Debtor was unable to access capital or debt markets on its own accord; (c) Spotswood is an insider and negotiated the Pre-Petition Loan for its own benefit and the benefit of other insider and sole owner of the Debtor, Spotswood NR; (d) there was no ready or open source of repayments other than potentially through earnings from operations; and (e) the Pre-Petition Loan was

3

modified by Spotswood to (i) allow a security interest in substantially all of the Debtor's assets for no additional consideration and (ii) a $2,500,000 distribution to Spotswood NR. All of these actions were taken to the detriment of Monarch when the Debtor and Spotswood—who are really one and same—knew that payments to Monarch would be due and Debtor had determined that it would not pay Monarch under the applicable contract.

## BACKGROUND

A. <u>Spotswood and the Debtor are controlled by the same members and manager.</u>

8.     Debtor's sole member is Spotswood NR II, LLC,[3] and the Debtor's prior sole manager is John M. Redmond.[4] *See* **Exhibit A**, *Debtor's Response to Monarch Midstream, LLC's First Discovery Requests Pertaining to the Debtor's Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Postpetition Financing and (II) Granting (A) Adequate Protection to Prepetition Secured Party and (B) Related Relief [Docket No. 9],* pg. 7 of 19. Response to Interrogatory No. 5.

9.     John Redmond is also a member of Spotswood. *See* **Exhibit A**, pg. 11 of 19, Responses to Interrogatory Nos. 16 and 17 (listing John M. Redmond, Doug Redmond, and CB Rowan as individual members of the Spotswood and Spotswood NR).

---

[3] Spotswood NR II, LLC, ("<u>Spotswood NR</u>") owns 100% of the Debtor. *See* Docket No. 4; **Exhibit A**, pgs. 9–10 of 19, Response to Interrogatory No. 15.

[4] "On or about April 9, 2024, John M. Redmond, as the sole Manager of the Management Committee of [the Debtor], and Spotswood NR II, LLC,[4] as the sole Member of the [Debtor], determined it was in the best interest of the [Debtor] to (i) accept the resignation of John M. Redmond as Manager of the [Debtor], (ii) appoint Keith F. Curlee as the Manager of the [Debtor], and (iii) appoint Erik White . . . to serve as Chief Restructuring Officer of the [Debtor]." *See* Docket No. 1, Corporate Resolution of Hilltop SPV, LLC (the "<u>Corporate Resolution</u>").

#102579237v6

10. The Debtor, Spotswood, and Spotswood NR share the same corporate address of 1437 South Boulder Ave., Suite 700, Tulsa, OK, 74119. *See* Docket No. 1, Proof of Claim No. 9.

11. In summary, the members/manager, registered agent, and address of Spotswood, Spotswood NR, and the Debtor are nearly identical. John Redmond, Douglas Redmond, and CB Rowan are all members of Spotswood and Spotswood NR (sole member of the Debtor). The fact that Spotswood is an insider is not in dispute as the Debtor designated Spotswood NR as an insider by filing a *List of Equity Security Holders* that Spotswood NR owns 100% of the Debtor, and Spotswood is made up of the same members as Spotswood NR.

12. Further, the Debtor identified that Spotswood and Spotswood NR "share common ownership with [Debtor] and are related to [Debtor]'s assets or operations." *See* Docket No. 4; **Exhibit A**, pg. 11 of 19, Response to Interrogatory No. 20; **Exhibit D** (addresses are the same on Spotswood's UCC statement for Debtor and Spotswood). Further, the proposed order attached as Exhibit A to the DIP Motion discloses Spotswood is an insider. *See* Docket No. 9-1 ("the members of the sole member of the Debtor collectively hold a minority membership interest in Spotswood.")

B. Spotswood's Proof of Claim.

13. On June 3, 2024, the Debtor filed a voluntary petition for relief under chapter 11, subchapter V, of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code" or the "Code"). The Debtor continues to operate as a debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

14. As indicated in the *Declaration of Erik White, Chief Restructuring Officer, in Support of Chapter 11 Petition and First Day Matters* (the "First Day Declaration") [Docket No. 15], the Debtor is a special purpose entity whose sole purpose is to hold "various oil, gas,

5

and mineral leases in Texas (collectively, the "O&G Properties")." *See* First Day Declaration, ¶ 11.

15.     Monarch and the Debtor are the current parties to that certain Gas Gathering Agreement, dated November 16, 2009, as further amended ("GGA").

16.     On June 4, 2024, the Debtor filed a DIP Motion, proposing that insider and pre-petition lender, Spotswood, serve as its DIP lender. Spotswood was assigned a loan of the Debtor's in connection with the O&G Properties in 2021 (the "Pre-Petition Loan"). As a result of the Pre-Petition Loan, Spotswood holds a pre-petition "lien on substantially all of the Debtor's assets." *See id.*, ¶ 17.

17.     On August 12, 2024, Spotswood filed a proof of claim alleging it has a total claim of $3,909,132.09, with $3,414,900.00 being secured (the "Proof of Claim"). *See* Proof of Claim No. 9.

18.     The Proof of Claim was executed by John Redmond on behalf of Spotswood. *See id.*

19.     Below is a chronology of the ownership of the O&G Properties, illustrating important facts that illuminate the true character of Spotswood's Pre-Petition Loan:

| Date | Event |
|------|-------|
| 1/16/2009 | GGA with dedication to gatherer formed, and 5-year minimum volume period with initial gatherer. |
| 2012 | Monarch takes over the GGA. |
| 9/10/2020 | Debtor advised that GGA, as amended, includes minimum compression volume ("MVC") and compression fees are an annual commitment. *See* **Exhibit B** (email exchanges between John Redmond and former owner of the O&G Properties, Rivershore, detailing Debtor's obtaining the O&G Properties and becoming the successor-in-interest to the GGA. One email from John Redmond states the terms of the GGA do not matter because "we are getting for free [the O&G Properties]"). |

6

| 9/16/2020 | Debtor and Mr. Redmond acknowledge that the relevant assets remain distressed, even prior to the acquisition. *See* **Exhibit F**. |
|---|---|
| 9/29/2020 | Debtor obtains ownership of the O&G Properties (for "free") through assignment from Rivershore (an unaffiliated company), bill of sale, and conveyance; assumes and is bound by entire GGA, as amended. The Debtor is therefore the successor-in-interest to the GGA. |
| 9/29/2020 | Debtor entered into an unsecured loan with Hilltop Asset, LLC, who assumed the $4 million promissory note liability owed to JPMorgan Chase ("<u>Hilltop Asset Loan Documents</u>"). *See* First Day Declaration, ¶¶ 10, 14. |
| 9/29/2020 | Hilltop Asset, LLC assigned the Hilltop Asset Loan Documents to Hilltop Energy, LLC ("<u>Hilltop Energy Assignment</u>"). The Debtor and Hilltop Energy, LLC then executed a term note, dated September 29, 2020 ("<u>Term Note</u>") reflecting the Hilltop Energy Assignment (the Hilltop Energy Assignment and Term Note, collectively the "<u>Term Loan Agreement</u>"). *See id.*, ¶ 15. |
| 1/27/2021 | Debtor (Mr. Redmond) states that the collectability of the MVC is clearly questionable given Hilltop's balance sheet. *See* **Exhibit G**. |
| 7/28/2021 | Hilltop Energy, LLC, whose sole member is J.P. Broker-Dealer Holdings Inc., assigned the Term Loan Agreement to Spotswood, executing an assumption and assignment of the prior $4 million JPMorgan ***unsecured*** note for $750,000 ("<u>Spotswood Assignment</u>"). Concurrently with the Spotswood Assignment, the Debtor and Spotswood executed a First Amendment to the Term Loan Agreement and that certain Security Agreement (as amended or modified and collectively, "<u>Pre-Petition Loan Documents</u>"), whereby Debtor paid $750,000.00 towards principal on the Term Note, for a remaining balance of $3,250,000.00 owed to Spotswood (the "<u>Pre-Petition Loan</u>"). *See* Proof of Claim No. 9-1. <br><br> To secure the obligations under the Pre-Petition Loan Documents, the Debtor executed the Security Agreement in favor of Spotswood, granting Spotswood a lien on substantially all of the Debtor's assets, including all accounts, deposit accounts, inventory and equipment, cash, and other rights to the payment of money or other monies due. *See* First Day Declaration, ¶¶ 16–17; **Exhibit C**. Through the Spotswood Assignment and amendments to the Pre-Petition Loan Documents, Spotswood became the pre-petition secured lender of the Debtor. |
| 11/12/2021 | Monarch sends and Debtor receives MVC invoice for Year Six under the GGA for $311,144.25. This invoice was not paid. |
| 11/21/2021 | Mortgage for First Amendment to the Term Loan Agreement and that certain Security Agreement recorded by Spotswood. |

#102579237v6

| 11/22/2021 | Debtor (through John Redmond) testifies that on this date, it had determined that it would not pay Monarch the MVC payment for Year Six. |
| 2021 | Debtor makes distribution of $2,500,000 to Spotswood NR. *See* **Exhibit A**, Response to Interrogatory No. 19. |
| 2/22/2022 | UCC Statement Recorded by Spotswood, stating it has a lien on substantially all of the Debtor's assets. *See* **Exhibit D**. |
| 6/21/2022 | Monarch Files Arbitration for Year Six and Seven MVC fees (the "Arbitration"). |
| 9/11/2023 | Arbitration award to Monarch on MVC for $756,374.40, plus the MVC Year Eight amount when it becomes due in November (the "Judgment"). |
| 3/5/2024 | Judgment issued for $1,137,684.36 as a result of Arbitration. |
| 3/26/2024 | Notice of Default sent from Spotswood to Debtor due to Judgment. *See* **Exhibit E**. |
| 4/4/2024 | Monarch records Abstract of Judgment recorded in Leon County (the "Judgment Lien"). |
| 4/9/2024 | John Redmond steps down from management of Spotswood NR, and Erik White is appointed CRO. John Redmond maintains his position at Spotswood. |
| 4/11/2024 | Spotswood accelerates Pre-Petition Loan and enforces 8% default interest rate. *See* **Exhibit E**. |
| 6/3/2024 | Debtor files for bankruptcy. |
| 6/4/2024 | Debtor files adversary proceeding to avoid Judgment Lien as a preference (the "Adversary Proceeding"). |

20.    Analyzing the above events indicates that Spotswood was assigned an unsecured loan in relation to the O&G Properties, but the Debtor allowed Spotswood to obtain a security interest in substantially all of its assets for no additional consideration.

21.    Bizarrely, the Pre-Petition Loan Documents were also amended by Spotswood and the Debtor to allow the following:

#102579237v6

> 3. **Consent to Distribution.** Lender hereby waives the limitations set forth in Section 7.1 of the Loan Agreement and consents to Borrower declaring and paying one or more distribution on Capital Stock of the Borrower during the third and fourth calendar quarters of the year 2021 in a total aggregate amount not to exceed **$2,500,000** (the "**Distribution**"). The consent granted herein is a one-time consent concerning the Distribution and shall not be construed as a consent, authorization or waiver of any kind beyond or otherwise in excess of the Distribution.

*See* Proof of Claim 9-1; **Exhibit C**.

22.     In 2021, after the execution of the Pre-Petition Loan Documents, Spotswood NR received a distribution from the Debtor of $2,500,000. *See* **Exhibit A**, Response to Interrogatory No. 19.

23.     While the Debtor could have made payments to decrease the interest accruing under the Pre-Petition Loan, it did not. *See* **Exhibit E**. Without Spotswood's acceleration, the Pre-Petition Loan was not due to be paid until 2027. *See* **Exhibit C**. Yet, Spotswood ensured its claim would be due and owing during the pendency by the bankruptcy by sending a notice a default on March 26, 2024, and electing its default rate interest rate of 8% on April 11, 2024. *See* **Exhibit E**.

24.     In the notice, Spotswood claims the Debtor defaulted under the Pre-Petition Loan by not paying Monarch under the GGA. *See id.* However, the Debtor and Spotswood are effectively controlled by the same people—John Redmond, Doug Redmond, and CB Rowan—meaning the same people chose to not pay Monarch and then elected default under the Pre-Petition Loan to ensure that only Spotswood would recover in this bankruptcy. *See* **Exhibit E**, Dkt. No. 90 (Spotswood receiving $2.5 million for its Pre-Petition loan while unsecured creditors receive less than $50,000).

## ARGUMENT AND AUTHORITIES

**I.     Monarch Has Standing to Pursue the Relief Sought in this Motion and Object to Spotswood's Claim.**

25.     Courts have held that an individual creditor may seek equitable subordination and recharacterization so long as it is able to show "particularized injury." *In re Vitreous Steel Prods*

9

*Co.*, 911 F.2d 1223 (7th Cir. 1990) (general unsecured creditor may assert equitable subordination); *Sam Rei, LLC v. The Continental Group, LLC (In re Strata Title, LLC)*, 2014 Bankr. LEXIS 4829 (Bankr. D. Ariz. Nov. 25, 2014) (discussing issue and following *In re Vitreous*, finding that individual creditors may assert equitable subordination where they have "interest in subordination separate and apart from the interests of the estate as a whole"); *Elswick Co., LLC v. Comm2013 CCRE12 Crossing Mall Rd. LLC (In re Tara Retail Grp., LLC)*, 595 B.R. 215, 222 (Bank. N.D.W. Va. 2018) (finding a creditor that filed an unsecured claim has standing to pursue recharacterization and equitable subordination of another creditor's claim).

26.     Similarly, a creditor has standing to object to a proof of claim. *See In re Dominelli*, 820 F.2d 313, 316 (9th Cir. 1987); *AI International Holdings (BVI), Ltd. v. MUFG Union Bank, N.A. (In re Weinstein Co. Holdings)*, 595 B.R. 455 (Bankr. D. Del. 2018); *In re Micro-Precision Technologies, Inc.*, 303 B.R. 238, 243 (Bankr. D.N.H. 2003) (creditor has standing if its rights are directly implicated by the claim).

27.     Currently, Monarch has filed secured and unsecured claims against the Debtor. *See* Proofs of Claim Nos. 6–7.

28.     As it stands, Monarch will be harmed if Spotswood's secured claim is not recharacterized or equitably subordinated because the Debtor's plan only proposes a pro-rata distribution of $48,237.00 to unsecured creditors while Spotswood will receive an allowed secured claim of $2,500,000 based on the Pre-Petition Loan. *See* Dkt. No. 90. The plan does not consider paying Monarch's Judgment Lien due to the pending Adversary Proceeding.

## II.     Spotswood's Claim Should Be Recharacterized as an Equity Interest.

29.     Under section 105(a) of the Bankruptcy Code and established case law, under appropriate circumstances, the Court is authorized to characterize an alleged "claim" as an equity

interest. *See* 11 U.S.C. § 105(a); *Grossman v. Lothian Oil Inc. (In re Lothian Oil Inc.)*, 650 F.3d 539, 544 (5th Cir. 2011).

30.     When presented with a recharacterization request, a court is tasked with determining the true character of an outlay of funds, *Citicorp Real Estate v. PWA, Inc. (In re Georgetown Bldg. Assocs. Ltd. P'ship)*, 240 B.R. 124, 138 (Bankr. D.D.C. 1999), by examining whether the relevant transaction created a debt or equity relationship from the outset. *See Lothian,* 650 F.3d at 544.

31.     The *Lothian* court recognized that recharacterization is part of a bankruptcy court's authority to allow or disallow claims under 11 U.S.C. § 502, coupled with the Supreme Court's opinion in *Butner v. United States*. *See id.* at 542.

32.     In the Fifth Circuit, applicable state law determines the nature of a transaction, even if one of the entities seeks bankruptcy protection. *Id.* at 541. The Pre-Petition Loan is to be interpreted under Oklahoma law. *See* **Exhibit C**.

33.     To distinguish between debt and equity, most states typically employ a multi-factor test from federal tax law. A bankruptcy court interpreting an Oklahoma transaction did the same. *See Miller v. Dow (In re Lexington Oil & Gas Ltd.)*, 423 B.R. 353, 365 (Bankr. E.D. Okla. 2010); *see also id.* at 544 (*citing Arch Petroleum, Inc. v. Sharp*, 958 S.W.2d 475, 477 n.3 (Tex. Ct. App. 1997)); *Jones v. United States*, 659 F.2d 618, 622 n.12 (5th Cir. 1981); *Estate of Mixon v. United States*, 464 F.2d 394, 402 (5th Cir. 1972)).

34.     In applying this test, courts "consider all the factors and weigh the evidence favoring the characterization of the [interest] as debt or equity, while realizing that the various factors are not of equal significance and that no one factor is controlling." *See Lothian,* 650 F.3d at 544 (quoting *Mixon,* 464 F.2d at 402).

#102579237v6

35.     Accordingly, Monarch takes each factor in turn, illustrating why most factors weigh in favor of characterizing the Spotswood's claim as an equity interest rather than debt.

A.  Intent of the Parties.

36.     The determinative inquiry in classifying claims as debt or equity is the intent of the parties as it existed at the time of the transaction. *In re Submicron Sys. Corp.*, 432 F.3d 448, 457 (3d Cir. 2006). However, because subjective intent is difficult to determine, "courts look to the objectively indicated intent of the parties . . . ." *In re Lexington*, 423 B.R. at 367. Here, at the time of the Pre-Petition Loan, the intent of the Debtor and Spotswood appears to be an equity contribution in favor of Spotswood and Spotswood NR.

37.     The Debtor and Spotswood mutually agreed to change the terms of the Pre-Petition Loan to allow (a) a distribution of $2,500,000 to Spotswood NR and (b) Spotswood a secured lien on substantially all of Debtor's assets for no additional consideration. The Term Loan Agreement that was assigned to Spotswood was provided on an unsecured basis. *See* **Exhibit C**, pg. 6.

38.     Moreover, the Pre-Petition Loan occurred when the Debtor has just obtained the assets "for free" from a bankruptcy proceeding after the prior owner/operators of the O&G Properties were having difficulty meeting their outstanding debt obligations. This is the type of risk that no outside lender would likely undertake on behalf of a distressed asset with no indicated market value.

39.     In fact, the only reason the Pre-Petition Loan Documents contain specific loan terms such as a maturity date, interest rate, events of default, etc. is because the Pre-Petition Loan was assigned from a non-insider lender to Spotswood pre-petition.

40.     Therefore, the amendments made by Spotswood and the Debtor to the Pre-Petition Loan Documents indicate their intent that the Pre-Petition Loan be an equity contribution. Accordingly, this factor weights in favor of recharacterizing Spotswood's claim.

B.  <u>Identity Between Shareholders and Creditors.</u>

41.     Where the facts show that a putative creditor makes loans to the debtor in proportion to its respective ownership, this factor weighs in favor of characterizing the claimed amount as an equity interest. *Bayer Corp. v. MascoTech, Inc., et al. (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 751 (6th Cir. 2001) ("Where there is an exact correlation between the ownership interest in the equity holders and their proportionate share of the alleged loan . . . this evidence standing alone is almost overwhelming."); *see also In re Cold Harbor Associates, L.P.*, 204 B.R. 904, 917 (Bankr. E.D. Va. 1997). Here, Spotswood NR is the 100% owner of the Debtor. Spotswood is controlled by the same members (Doug Redmond and CB Rowan) and manager that was in charge at the time of the Pre-Petition Loan's execution, John Redmond. In fact, John Redmond signed on behalf of the Debtor and Spotswood throughout the Pre-Petition Loan Documents. Due to the Debtor's sole-owner status and Spotswood sharing the same members and manager as Spotswood NR, Spotswood had a significant interest in the success of the Debtor at the time the Pre-Petition Loan was executed. Thus, these facts strongly suggest that the Pre-Petition Loan was a capital contribution by Spotswood, not an issuance of debt by the Debtor.

C.  <u>Extent of Participation in Management by the Holder of the Instrument.</u>

42.     As the entity controlled by the same members and managers as the Debtor at the time of the Pre-Petition Loan, Spotswood controlled the management of the Debtor. Thus, Spotswood had ultimate control over the entirety of the transaction between the Debtor and Spotswood. Therefore, this factor weighs in favor of characterizing the claim as equity.

#102579237v6

D. Ability of the Debtor to Obtain Funds from Outside Sources.

43. As stated above, the Pre-Petition Loan occurred in 2021. At that time, the Debtor obtained the O&G Properties from another bankruptcy "for free" and the previous lenders wanted to unload the debt due to the asset experiencing a precipitous decline in value. *See* **Exhibits F, G**. Thus, the Debtor would have had little ability to obtain funds from any party other than its equity owners. Therefore, this factor weighs in favor of an equity characterization.

E. Adequacy of Capitalization.

44. Capitalization should be considered at the time the transfer was made. *AutoStyle Plastics*, 269 F.3d at 751. As stated above, at the time of the Pre-Petition Loan transaction, the Debtor has just obtained the assets "for free" from a bankruptcy proceeding after the prior owners/operators of the O&G Properties were having difficulty meeting their outstanding debt obligations and obligations under the GGA.

45. Further, John Redmond admitted that the asset was distressed and determined the Debtor could not meet the obligations under the GGA at or around the time of the Pre-Petition Loan. *See* **Exhibits F, G**.

46. Despite the Pre-Petition Loan, the Debtor never made a single payment to Spotswood (except for the initial $750,000 payment) to decrease accruing interest, failed to meet its obligations under the GGA, and sought bankruptcy relief instead of simply paying Monarch its gathering and compression fees, including for the MVC.

47. Under these circumstances, this factor weighs in favor of characterizing the claimed amounts as equity interests, not debt.

F. Risk Involved.

14

48.     Again, at the time of the Pre-Petition Loan, the Debtor just obtained a distressed asset with a track record of under-performing. Despite that known risk, Spotswood entered into the Pre-Petition Loan. Such loan does not support an extension of credit but suggests that Spotswood attempting to protect an equity interest in the Debtor.

G.  Formal Indicia of the Arrangement.

49.     As stated above, the Proof of Claim attaches Pre-Petition Loan Documents that effectuated the Spotswood Assignment. Importantly, John Redmond signed on behalf of the Debtor and Spotswood. Between the Debtor and Spotswood, the formal terms of the agreement are laid out in the First Amendment to Term Loan Agreement and the Pledge, Security Agreement and Assignment dated July 28, 2021. While there are formal Pre-Petition Loan Documents, these documents and terms were merely assigned from the prior lender to Spotswood.

50.     The Security Agreement, which was wholly executed and negotiated between the Debtor and Spotswood, granted Spotswood a security interest in substantially all of the Debtor's assets without additional consideration than the terms of the transferred loan. Further, the deeds of trust and related UCC filing were not filed until November 21, 2021, and February 2022, respectively despite the Pre-Petition Loan Documents being executed on July 28, 2021. *See* **Exhibits C-D**.

51.     Even stranger, the First Amendment to Term Loan Agreement was specifically amended by the Debtor and Spotswood so Spotswood NR could receive a $2,500,000 distribution from the Debtor is 2021. *See* Proof of Claim 9-1; **Exhibit A**, Response to Interrogatory No. 19; **Exhibit C**.

52.     Thus, given the above facts that indicate lack of indicia of a formal loan agreement, this factor weighs in favor of an equity characterization.

15

H. <u>Relative Position of the Obligees as to Other Creditors Regarding Payment of Principal and Interest.</u>

53.     Subordination of loans to claims of other creditors indicates that the loans were equity contributions. *Autostyle Plastics*, 269 F.3d at 752. Here, Spotswood specifically ensured that Spotswood NR obtained an unsecured distribution of $2,500,000 rather than another secured loan.

54.     Further, the timing of the filing of the UCC occurred before Monarch could obtain its judgment lien, ensuring that Spotswood would have a first-priority lien on the assets. Thus, this factor weighs in favor of an equity characterization.

I. <u>Voting Power of the Holder of the Instrument.</u>

55.     Spotswood has the same members and manager of Spotswood NR, the sole member of the Debtor. As such, it had total voting control over the Debtor at the time of the Pre-Petition Loan. Accordingly, this factor weighs in favor of an equity characterization.

J. <u>Provision of a Fixed Interest Rate.</u>

56.     The ordinary lender is concerned with receiving interest payments because interest represents the sole return on its investment; therefore, more concern with interest is indicative of debt while less concern with interest is indicative of equity. *Lexington Oil*, 423 B.R. at 370. Here, the Pre-Petition Loan was assigned to Spotswood with a non-default interest rate of 6% and a default interest rate of 8%.

57.     Despite the Debtor defaulting under the loan as soon as it failed to pay Monarch (as early as 2021 when Monarch sent the Year Six invoice that the Debtor did not pay), Spotswood did not elect to accelerate to the default interest rate of 8% until April 11, 2024. *See* **Exhibit E**, Pay-off amount attached to default letter. Even stranger, Spotswood first sent a notice of default on March 26, 2024, yet did not institute the default interest rate until April 11, 2024. *See id.*

58.     Therefore, this factor favors characterization of the claim as an equity interest because while an interest rate was in place, it was due to the loan documents of the non-insider lender, not Spotswood. Further, Spotswood chose to enact the default interest rate far later than an ordinary lender would.

K.  <u>A Contingency on the Obligation to Repay.</u>

59.     It does not appear there are any express contingencies on the obligation to repay. This factor appears to be neutral.

L.  <u>Source of Repayments.</u>

60.     A transaction is indicative of an equity contribution when the expectation of repayment depends solely on the success of the borrower's business. *Autostyle Plastics*, 269 F.3d at 751. Here, any repayment depended solely on the success of the Debtor's business and was secured by liens on substantially all of the Debtor's assets. The Debtor's assets were limited to only the O&G Properties and were not diversified. Due to the Debtor obtaining the O&G Properties "for free", it was not reasonable for Spotswood to expect repayment from sale of the Debtor's assets. Therefore, the amounts loaned by Spotswood should be characterized as an equity contribution because they were entirely dependent on the Debtor's success.

M.  <u>Fixed Maturity Date.</u>

61.     While there is a maturity date, it is due to the terms of the Pre-Petition Loan that were transferred from the prior lender to Spotswood, and not due to any negotiation between the Debtor and Spotswood. Consequently, this factor weighs in favor of an equity characterization.

62.     As noted above, the Fifth Circuit instructs that not all of the foregoing factors should be weighed equally and not all of the factors need to be satisfied. Nevertheless, here, almost all of the factors appear to be satisfied and almost all weigh in favor of characterizing Spotswood's

17

claim as an equity contribution. As a result, the Pre-Petition Loan should be properly characterized as an equity contribution.

### III. Spotswood's Claim Should Be Equitably Subordinated.

63. If the Court concludes that Spotswood's claim should not be recharacterized, the claim should nonetheless be equitably subordinated to the claims of all other unsecured creditors.

64. Under section 510(c) of the Bankruptcy Code, the Court may, "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." 11 U.S.C. § 510(c). The Court may exercise its power of equitable subordination where (i) the claimant engaged in some type of misconduct, (ii) that misconduct "resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant," and (iii) such subordination is otherwise consistent with the provisions of the Bankruptcy Code. *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977) (relying on Bankruptcy Code § 510(c)); *Shubert v. Lucent Techs. Inc. (In re Winstar Commc'ns)*, 554 F.3d 382, 411 (3rd Cir. 2009).

65. The purpose of equitable subordination is "to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 323 F.3d 228, 233-34 (3rd Cir. 2003) (citation omitted). Equitable subordination may be warranted even by misconduct "unrelated to the acquisition or assertion of the particular claim whose status [is] at issue." *Winstar*, 554 F.3d at 412 (citation omitted).

66. Where the claimant is an insider of the debtors, the threshold for granting equitable subordination is much lower and a court may equitably subordinate a claim upon "presenting

material evidence of [the claimant's] unfair conduct." *Winstar*, 554 F.3d at 412 (quoting *Estes v. N & D Props., Inc. (In re N & D Props, Inc.)*, 799 F.2d 726, 731 (11th Cir. 1986)).

67.     That is because any dealings between an insider and debtor must be "rigorously scrutinized" by a court. *Winstar*, 554 F.3d at 412 (citing *In re Fabricators, Inc.*, 926 F.2d 1458, 1465 (5th Cir. 1991)); *see also* S.Rep. No. 95-989, at 25 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5810 ("An insider is one who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at [arm's] length with the debtor.").

A. <u>Spotswood Is An Insider and Alter Ego of the Debtor.</u>

68.     Spotswood NR is 100% owner of the Debtor, and Spotswood is controlled by the same members and manager as Spotswood NR and the Debtor: John Redmond, Doug Redmond, and CB Rowan.

69.     The members/manager, registered agent, and address of Spotswood, Spotswood NR, and the Debtor are nearly identical. John Redmond, Douglas Redmond, and CB Rowan are all members of Spotswood and Spotswood NR. The fact that Spotswood is an insider is not in dispute as the Debtor designated Spotswood NR as an insider by filing a *List of Equity Security Holders* that Spotswood NR owns 100% of the Debtor, and Spotswood is made up of the same members as Spotswood NR.

70.     Further, the Debtor identified that Spotswood and Spotswood NR "share common ownership with [Debtor] and are related to [Debtor]'s assets or operations." *See* Docket No. 4; **Exhibit A**, pg. 11 of 19, Response to Interrogatory No. 20; **Exhibit D** (addresses are the same on Spotswood's UCC statement for Debtor and Spotswood). Further, the proposed order attached as Exhibit A to the DIP Motion discloses Spotswood is an insider. *See* Docket No. 9-1 ("the members of the sole member of the Debtor collectively hold a minority membership interest in Spotswood.")

B.  Spotswood Engaged in Inequitable Conduct that Conferred it an Advantage.

71.    In general, courts tend to recognize three categories of misconduct which may constitute inequitable conduct: (1) fraud, illegality, and breach of fiduciary duties; (2) undercapitalization; or (3) claimant's use of the debtor as a mere instrumentality or alter ego. *Fabricators, Inc. v. Technical Fabricators, Inc. (In re Fabricators, Inc.)*, 926 F.2d 1458, 1467 (5th Cir.1991) (citing *Wilson v. Huffman (In re Missionary Baptist Found. of Am., Inc.)*, 712 F.2d 206, 212 (5th Cir.1983)).

72.    Inequitable conduct may occur before or after a bankruptcy is filed. *See Winstar*, 554 F.3d at 393, 397 (equitably subordinating a claim based on a creditor using the debtor as a mere instrumentality "to inflate its own revenue" through several pre-petition transactions); *Fabricators*, 926 F.2d at 1468 (equitably subordinating a claim based on inequitable acts occurring prepetition, including obtaining liens based on capital contributions); *Wilson*, 712 F.2d at 212–13 (equitably subordinating claim based on inequitable conduct occurring during pre-petition transactions).

73.    A court may equitably subordinate a claim if there is "some showing of suspicious, inequitable conduct beyond mere initial undercapitalization of the enterprise." *AutoStyle Plastics, Inc.*, 269 F.3d at 747.

74.    A court may also equitably subordinate a claim if the claimant actually used such control to advantage itself to the detriment of the debtor or creditors. *Smith v. Assocs. Commercial Corp. (In re Clark Pipe & Supply Co.)*, 893 F.2d 693, 699 (5th Cir. 1990).

75.    As described above, the Pre-Petition Loan was undercapitalized because Spotswood knowingly took on the assignment of $4,000,000 unsecured loan when the Debtor obtained the distressed O&G Properties "for free." *See* **Exhibits B, F, and G**.

20

76.     Further, Spotswood used its influence and control of the Debtor to its advantage by amending the Pre-Petition Loan Documents to allow (a) a distribution of $2,500,000 to Spotswood NR; (b) Spotswood a secured lien on substantially all of Debtor's assets for no additional consideration; and (c) an intentional default under the Pre-Petition Loan through non-payment to Monarch.

77.     In other words, Spotswood exceed its authority under the Pre-Petition Loan Documents as assigned, acted inequitably in amending the Pre-Petition Loan Documents, breached fiduciary duties, and used the Debtor as a mere instrumentality to benefit itself and Spotswood NR—along with its identical individual members—John Redmond, Doug Redmond, and CB Rowan. *See In re Clark Pipe & Supply Co.*, 893 F.2d at 700 (explaining that equitable subordination is a just remedy when a lender inequitably exercises its rights under a loan agreement).

78.     These actions were to the detriment of the Debtor and other creditors, such as Monarch, because Spotswood inequitably obtained a lien on the Debtor's assets for no consideration and intentionally accelerated the Pre-Petition Loan based on a default it had complete control over.

79.     Now it is nearly impossible for any other creditor to obtain recovery from this bankruptcy proceeding. *See* Dkt No. 90.

80.     Simply put, when the Debtor granted the lien to Spotswood for no consideration and Spotswood accelerated its Pre-Petition Loan, Spotswood unjustifiably catapulted ahead of other creditors.

#102579237v6

81.     For example, the Debtor's proposed plan only proposes a pro-rata distribution of $48,237.00 to unsecured creditors while Spotswood will receive an allowed secured claim of $2,500,000 based on the Pre-Petition Loan. *See* Dkt. No. 90.

82.     In summary, the Court should equitably subordinate Spotswood's claim because the Pre-Petition Loan is not only undercapitalized but was also used by Spotswood to in-equitability obtain its secured status, accelerate the loan's maturity date, and to give Spotswood NR $2,500,000.

## CONCLUSION

For the reasons described herein, and as Monarch will demonstrate further at the hearing, Spotswood is not entitled to be treated as a secured creditor in these cases. Monarch therefore respectfully requests entry of an order: (a) recharacterizing Spotswood's secured claim as an equity interest in the Debtor; (b) or, in the alternative, to the extent Spotswood's claim is not recharacterized, equitably subordinating its claim to those of all unsecured creditors; (c) disallowing Spotswood's proof of claim consist with the relief sought in this motion; and (d) any further relief that is just and proper.

*[remainder of page is intentionally left blank]*

#102579237v6

Dated: September 12, 2024

Respectfully submitted,

**JONES WALKER LLP**


WILLIAM E. SPARKS
Texas Bar No. 24031619
10001 Woodloch Forest Drive, Ste. 350
The Woodlands, TX  77380
Telephone: (281) 296-4552
Facsimile: (281) 296-4575
 wsparks@joneswalker.com

JOSEPH E. BAIN
Texas Bar No. 24085187
ELIZABETH DE LEON
Texas Bar No. 24127215
811 Main Street, Suite 2900
Houston, TX 77002
Telephone: (713) 437-1800
Facsimile: (713) 437-1810
jbain@joneswalker.com
edeleon@joneswalker.com

*Attorneys for MONARCH MIDSTREAM, LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2024 a copy of the foregoing was filed electronically using the Court's CM/ECF system and served in accordance with the Federal Rules of Civil Procedure. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing.


WILLIAM E. SPARKS

23