**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: January 06, 2025**

*(signature)*

**MICHAEL M. PARKER**
**UNITED STATES BANKRUPTCY JUDGE**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HILLTOP SPV, LLC, | § | CASE NO. 24-60308-MMP |
| | § | |
| DEBTOR. | § | CHAPTER 11-V |

**ORDER AND OPINION GRANTING MOTION TO REJECT GAS GATHERING AGREEMENT**

**I.    INTRODUCTION**

The Court heard Debtor's *Motion to (I) Reject Gas Gathering Agreement on a Nunc Pro Tunc Basis and (II) Establish a Bar Date for Filing Related Rejection Claims* (ECF No. 84, "**_Rejection Motion_**") and the *Response to Hilltop SPV, LLC's Motion to Reject Executory Contract* (ECF No. 98, "**_Response_**") filed by Monarch Midstream, LLC ("**Monarch**"). After considering the evidence admitted and arguments of counsel, the Court has determined the *Rejection Motion* should be granted. Accordingly, Hilltop SPV, LLC ("**Hilltop**") may reject the Gas Gathering Agreement ("**GGA**") but the covenants running with the land contained in and created by the GGA will remain post-rejection. The Court will use the parties' related adversary proceeding,

1

Adv. Proc. No. 24-6015, to determine (i) the scope of the GGA's covenants running with the land and what performance duties may remain by the parties' post rejection, and (ii) Monarch's damages related to the rejection.

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b).[1] Venue is proper under 28 U.S.C. § 1408 and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (M), and (O). This Order and Opinion serves as this Court's findings of fact and conclusions of law under Federal Rules of Bankruptcy Procedure 7052 and 9014.[2]

## III. BACKGROUND
### a. PROCEDURAL BACKGROUND

The day after Hilltop filed for bankruptcy relief, it filed a complaint against Monarch seeking a declaratory judgment that the GGA is an executory contract which can be rejected. Adv. Proc. No. 24-06015, ECF No. 1. Hilltop timely amended its complaint, Adv. Proc. No. 24-06015, ECF No. 21, and simultaneously filed its *Rejection Motion* in this case. ECF No. 84. In both the *Amended Complaint* and *Rejection Motion*, Hilltop asserted that it could reject the GGA in whole, but any real property covenants would remain post-rejection. Adv. Proc. No. 24-06015, ECF No. 21; Case No. 24-60308, ECF No. 84. With Hilltop proceeding on two parallel tracks with similar goals, Monarch filed its *Answer and Counterclaim* in the adversary, Adv. Proc. No. 24-06015, ECF No. 22, and its *Response* to the *Rejection Motion* in this case. ECF No. 98.

---

[1] All statutory citations and references are to title 11 of the United States Code ("**Code**"), unless otherwise noted.
[2] All citations and references to procedural rules are to the Federal Rules of Bankruptcy Procedure, unless otherwise noted.

The parties jointly sought expedited consideration of Hilltop's *Rejection Motion*. ECF Nos. 107, 108. Monarch asked the Court to not only decide whether the GGA was executory, but also what portions of the GGA created covenants running with the land.[3] Hilltop, on the other hand, wanted the *Rejection Motion* to only decide whether the GGA could be rejected, procedurally reserving for the adversary proceeding the determination of what portions of the GGA survive rejection because they create covenants running with the land. Without Hilltop's consent otherwise, the Court believes it procedurally appropriate to only address whether the GGA is executory and can be rejected in the *Rejection Motion*, and reserve for the adversary proceeding the question of what covenants run with the land post-rejection.

b. **FACTUAL BACKGROUND**

Hilltop owns oil, gas, and mineral leases in the Hilltop Lakes in Leon and Robertson Counties, Texas. ECF No. 84 ¶¶ 14–15; ECF No. 98 ¶ 7. Once formed, Hilltop acquired certain oil and gas assets from Hilltop Asset, LLC and in so doing inherited the GGA it now seeks to reject. ECF No. 84 ¶¶ 13, 16. The GGA was first entered into between Hilltop Resort GS, LLC—Monarch's predecessor-in-interest—and Gastar Exploration Texas, LP—Hilltop's predecessor-in-interest. ECF No. 84 ¶ 16; ECF No. 84 Ex. A, at 1;[4] ECF No. 98 ¶ 6.

Under the GGA, Hilltop is tasked with tendering natural gas to Monarch at certain Receipt Points[5] which Monarch will deliver back to Hilltop at certain Delivery Points. *GGA* ¶¶ 1.1, 5.1.

---

[3] Throughout the parties' briefs and at oral argument, the parties used the terms "covenants running with the land" and "real property covenants" interchangeably.
[4] Hilltop attached the GGA with exhibits and both amendments to its *Rejection Motion*. ECF No. 84, Exs. A–C. Rather than continuously citing to "ECF No. 84 Ex. A," the Court will cite to the GGA directly as "***GGA***" when talking about that document with the understanding that it may be found on the docket as Exhibit A to ECF No. 84. Similarly, the first amendment to the GGA, noted as Exhibit B to ECF No. 84, will be cited to as "***GGA 1A***." The second amendment to the GGA, found on the docket as Exhibit C to ECF No. 84, will be cited to as "***GGA 2A***."
[5] All capitalized terms not otherwise defined are given the meaning ascribed to them in the GGA.

Monarch gathers the gas at Hilltop's wellheads, for a fee,[6] compresses it at $0.15 per one thousand cubic feet of Gas ("**Mcf**"), and then distributes the gas to various points for further distribution by Hilltop. *Id.*; *GGA 2A*. There are two minimum volume requirements for Hilltop:

(1) Related to Monarch's gathering system: Hilltop must produce the total equivalent of 50,000 Mcf per day every quarter or pay, subject to offset for prior amounts exceeding the quarterly minimum requirement, "liquidated and agreed damages for the Quarterly Minimum Volume not being delivered" to Monarch based on a formulaic payment structure. *GGA* ¶¶ 1.1, 5.2(i)–(iii).

(2) Related to Monarch's compression services: Hilltop must provide 10,000 Mcf per day. *GGA 1A*.[7]

The GGA states the sole remedy for any party's liability are actual damages.[8] *GGA* ¶ 7.3.

The GGA explicitly creates two property interests which the parties agree are covenants running with the land. ECF No. 84 ¶ 45; ECF No. 98 ¶¶ 46–49, 52–61. Hilltop granted Monarch a right-of-way and easement across Hilltop's leases to access Monarch's equipment

---

[6] The GGA supposedly includes a schedule of the Gathering Fees as the parties understood them, but that schedule was not attached to either parties' motions.

[7] Both will be collectively: "the minimum volume requirements."

[8] Monarch argues it can seek injunctive relief, ECF No. 98 ¶ 26; but the provision of the GGA it cites to for support is found in an arbitration clause. *GGA* ¶ 13.3(vi). Despite the arbitration clause's allowance of injunctive relief in that forum, that clause conflicts with the Waiver of Damages provision found earlier in the GGA which stated: "direct actual damages shall be the sole and exclusive remedy, and all other remedies or damages at law or in equity are waived." *GGA* ¶ 7.3. Because courts must "seek to harmonize and give effect to all provisions [of a contract] so that none will be meaningless," the Court finds in the GGA the parties intended to limit damages generally but allow for only an arbitral tribunal to award injunctive relief. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017). In this way, each part of the contract is given full effect to avoid rendering another provision meaningless. *BMC Software, Inc. v. IBM*, 100 F.4th 573, 579 (5th Cir. 2024). Injunctive relief is an extreme remedy available only where damages would be insufficient. *Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir. 1981); *Huynh v. Blanchard*, 694 S.W.3d 648, 674 (Tex. 2024). Since a damages calculation is built into the GGA, it is presumed to be sufficient and therefore injunctive relief for failure to pay gathering or compression fees or meet the minimum volume requirements is foreclosed.

("**Easement**").[9] *GGA*, Ex. A ¶ 4. Hilltop also dedicated to Monarch all gas reserves in, under, and produced from Hilltop's leases in a specified area in the Hilltop Lakes ("**Dedication**"),[10] subject to Hilltop's reservations.[11] *GGA* ¶¶ 1.1, 3.1, 3.2. These interests exist for the life of the GGA, which lasts for another ten years until November 1, 2034. *GGA* ¶¶ 1.1, 2.1; *GGA 2A*.

---

[9] The Easement grant reads:

> (a) <u>Access.</u> To the extent that Producer may contractually or lawfully do so under its leasehold interests and other property rights in the subject Leases, Producer hereby grants, convey, assign, and transfer to Gatherer a right of way and easement across the Subject Leases, and across adjoining lands in which Producer may have an interest, for the purposes of installing, using, inspecting, repairing, operating, replacing, and removing Gatherer's facilities (including installation of new custody transfer meters and other equipment) used or useful in the performance of this Agreement.

*GGA*, Ex. A ¶ 4.

[10] The Dedication grant reads:

> <u>Dedicated Reserves</u>. Subject only to Producer's Reservations, Producer (i) exclusively dedicates and commits to the performance of this Agreement the Dedicated Reserves. . . . Producer agrees to cause any existing or future Affiliates of Producer to be bound by, and to execute and join as a party, this Agreement. The dedication and commitment made by Producer and their Affiliates under this Agreement is a covenant running with the land.

*GGA* ¶ 3.1. "Dedicated Reserves" is defined within the GGA as:

> [T]he interests of Producer and its Affiliates in all Gas reserves in and under, and all Gas owned or controlled by Producer or its Affiliates and produced or delivered from, (i) the Subject Leases and (ii) any other lands located with the AMI, whether now owned or hereafter acquired by Producer or its Affiliates.

*GGA* ¶ 1.1.

[11] The Producer's Reservations provide:

> <u>Producer's Reservations.</u> Producer reserves the following rights (and reasonable quantities of Gas to satisfy same) ("Producer's Reservations"): (i) to operate wells producing from the Dedicated Reserves as a reasonably prudent operator, (ii) to separate or process Gas using only mechanical equipment located at surface production facilities on or near wells producing from the Dedicated Reserves, (iii) to use Gas produced from the Dedicated Reserves for lease operations, (iv) to pool, communitize, or unitize Producer's interests in the Dedicated Reserves, and (v) to pay lessors' royalties in kind.

*GGA* ¶ 3.2.

## IV. ANALYSIS
### a. MOTION TO REJECT STANDARD

Section 365 of the Code allows trustees, subject to court approval, to assume or reject executory contracts and unexpired leases. § 365(a). In a chapter 11 case, the debtor remains in possession of property of the estate and takes on all the rights, duties, and powers of a trustee. § 1107. Section 365 thus allows a chapter 11 debtor to decide whether a "contract is a good deal for the estate going forward." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 373 (2019).

Although the Code does not lay out the legal standard a court must use to determine whether to approve a debtor's rejection or assumption under § 365, the Fifth Circuit has stated courts should use the deferential business judgment standard to help determine what is in the best interest of the estate. *Matter of J. C. Penney Direct Mktg. Servs., L.L.C.*, 50 F.4th 532, 534 (5th Cir. 2022). Thus, "a bankruptcy court should only withhold approval when 'the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code.'" *Id.* (quoting *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985)).[12]

### b. THE PARTIES ARGUMENTS

Hilltop seeks to reject the GGA in its entirety as an executory contract subject to rejection under § 365. Hilltop concedes the GGA contains covenants that run with the land and that such covenants will survive rejection. And yet, Hilltop asserts it can reject the GGA despite it containing covenants that run with the land. Monarch believes the GGA is not executory and that

---

[12] Supreme Court and Fifth Circuit case law suggest § 365 approval may undergo a more rigorous standard if the contract to be rejected involves matters of public interest or disrupts the supply of energy. *N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 526–27 (1984), *superseded by statute*, § 1113; *Mirant Corp. v. Potomac Elec. Power Co. (In re Mirant Corp.)*, 378 F.3d 511, 525 (5th Cir. 2004). Neither party has shown this matter deserves such heightened level of scrutiny.

because the GGA contains covenants that run with the land, the entire agreement is immune from rejection. The Court agrees with Hilltop and concludes the GGA is executory and not immune from rejection just because it contains covenants running with the land.

### c. THE GGA IS EXECUTORY

"A contract is executory if 'performance remains due to some extent on both sides.'" *Tempnology*, 587 U.S. at 373 (quoting *Bildisco*, 465 U.S. at 522 n. 6). Courts in the Fifth Circuit ask "whether, under the relevant state law governing the contract, each side has at least one material unperformed obligation as of the bankruptcy petition date." *Argonaut Ins. Co. v. Falcon V, L.L.C. (Matter of Falcon V, L.L.C.)*, 44 F.4th 348, 352 (5th Cir. 2022).

The Fifth Circuit does not allow slicing and dicing in the § 365 context—a chapter 11 debtor must reject or assume all of a contract. *Anytime Fitness, L.L.C. v. Thornhill Bros. Fitness, L.L.C. (Matter of Thornhill Bros. Fitness, L.L.C.)*, 85 F.4th 321, 325 (5th Cir. 2023). Here, the parties agree that the GGA is one indivisible agreement, ECF No. 84 ¶¶ 25–26; ECF No. 98 ¶¶ 34–35, but they disagree about (i) the legal effect of the rejection of an indivisible contract and (ii) whether the GGA is executory. ECF No. 84 ¶¶ 25–26; ECF No. 98 ¶¶ 37–45, 62–75.

Hilltop seeks to reject the entire GGA. Hilltop, however, concedes real property covenants in the GGA survive rejection not because of any choice Hilltop has made, but only because of bankruptcy law's limited ability to affect real property interests. Thus, Hilltop seeks to reject the entire GGA but will accept the consequences of such rejection, which will include remaining burdened by any real property covenants.

Monarch first argues the GGA is not executory because "performance only remains due on the Debtor's side." ECF No. 98 ¶ 37. Monarch believes its obligations under the GGA "to

7

construct, own, and operate" the compression station have already been completed and any non-operation would not be a material breach. ECF No. 98 ¶¶ 40–43; *GGA 1A*.

Hilltop must pay Monarch gas gathering and compression fees and meet its daily and quarterly minimum volume requirements. ECF No. 84 ¶¶ 17–21; ECF No. 98 ¶¶ 13–17, 19, 23, 44. Thus, Hilltop still has material obligations it must meet on its side.

Although Monarch constructed the new compression system and thereby met that portion of its obligation, it must continue to meet other obligations as they are ongoing. ECF No. 98 ¶¶ 13, 41. Since "own" and "operate" are not defined terms in the GGA, they must be given their ordinary meaning. ***Great Am. Ins. Co. v. Primo***, 512 S.W.3d 890, 893 (Tex. 2017) ("A contract's plain language controls. . . . And we assign terms their ordinary and generally accepted meaning unless the contract directs otherwise.").[13] "Own" and "operate" are written in the present tense, meaning Monarch (or its predecessor-in-interest) has a *continuing obligation* to own and operate the recently constructed compression system.

Monarch argues "operate" merely means the compression system must be in Monarch's custody or control, ECF No. 98 ¶ 42, but such a connotation is too limiting. In this context,[14] "operate" means Monarch must cause the compression system to continue to function, not just maintain "custody and control" of it. ***Id.***; *GGA 1A*; *Operate*, BLACK'S LAW DICTIONARY (online ed. 2024) ("1. To run some part of machinery or a business. 2. To function properly."); *Operate*,

---

[13] The GGA notes it is governed by the laws of the State of Texas. (*GGA* ¶ 13.2). Texas is also where the property at issue is located, so it is doubly proper to apply Texas law. *See* ***Butner v. United States***, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently."); ***Clarke v. Clarke***, 178 U.S. 186, 191 (1900) ("It is a principle firmly established that to the law of the state in which the land is situated we must look for the rules which govern its descent, alienation, and transfer, and for the effect and construction of wills and other conveyances").
[14] In the GGA, "operate" uses a direct object—the compression system—and is thus used as a transitive verb. *GGA 1A*; *Transitive*, MERRIAM-WEBSTER DICTIONARY (online ed. 2024); Matt Ellis, *Transitive Verbs: Definition and Examples*, GRAMMARLY (Aug. 3, 2022), https://www.grammarly.com/blog/parts-of-speech/transitive-verbs/. Thus, the Court uses the transitive verb definitions of operate to inform its opinion.

MERRIAM-WEBSTER DICTIONARY (online ed. 2024) ("1. Bring about, effect, 2a. to cause to function: work, 2b. to put or keep in operation."). If Monarch were to fail to operate the compression system, it could have disastrous consequences.[15]

Because these material obligations cannot be completed until termination of the agreement, Monarch still has outstanding obligations. Thus, material performance is required on both sides and the GGA is executory.

### d. COVENANTS RUNNING WITH THE LAND

Monarch next argues that because the GGA includes covenants running with the land it cannot be rejected. The parties agree that the GGA contains covenants running with the land. ECF No. 84 ¶¶ 39–42; ECF No. 98 ¶¶ 49, 52–53. But this begs the question: can the GGA, even though it has covenants running with the land, be rejected? And if so, what happens to those covenants after the GGA is rejected?

Because these are questions of first impression the Court begins at the beginning,[16] with the Code. Section 365 allows a debtor-in-possession to reject *any* executory contract. § 365(a).

### 1. SECTION 365 AND THE POWER AND CONSEQUENCE OF REJECTING AN ENTIRE CONTRACT

Rejection of an executory contract under § 365 is an incredibly powerful tool. ***Tempnology***, 587 U.S. at 386–87. "[A]ll executory contracts except those expressly exempted" may be assumed or rejected. ***Bildisco***, 465 U.S. at 526–27.

---

[15] Mike Lee & Mike Soraghan, *Explosions from unregulated pipelines can kill in Texas while energy companies go unpunished*, THE TEXAS TRIBUNE (Mar. 7, 2019), https://www.texastribune.org/2019/03/07/oil-gas-deadly-pipelines-no-rules/; *Carthage Explosion Leaves Damaged Facilities, Shut-In Gas*, NATURAL GAS INTELLIGENCE (Feb. 16, 2009), https://www.naturalgasintel.com/news/carthage-explosion-leaves-damaged-facilities-shut-in-gas-2/.

[16] LEWIS CARROL, ALICE'S ADVENTURES IN WONDERLAND 182 (The MacMillan Co. NY 1898) ("'Begin at the beginning,' the King said, very gravely, 'and go on till you come to the end: then stop.'"), reproduced and digitized in 2023 by Google Books at https://archive.org/details/carroll-1898-alice-in-wonderland/Carroll_1898_Alice_in_Wonderland/page/n3/mode/2up.

There are few limitations on a chapter 11 debtor's power to reject an executory contract. § 365(a) (making rejection subject to court approval), (d)(2) (saying if a party in the contract requests it, a court "may order the trustee to determine within a specified period of time whether to assume or reject"), (i) (allowing the purchaser in a land sale contract rejected by the trustee to opt to treat the contract as terminated or remain in possession of the land and offset any damages caused by the trustee's non-performance against their continuing payments). The Code does not say a chapter 11 debtor cannot reject an executory contract containing real property interests. The Rules do not say this either. The Code, however, does say landlords and tenants can reject leases, and even assign them to a new party, even though the leases involve grants of interests in real property. § 365(a), (g), (k). The same applies for a debtor who is a party to an executory land sale contract. § 365(i). In those instances, a trustee can reject an executory contract involving an interest in real property. Why should a real property covenant in an executory contract be treated any differently? *See* **Southland Royalty Co. v. Wamsutter LLC (In re Southland Royalty Co.)**, 623 B.R. 64, 89 (Bankr. D. Del. 2020) ("Given the executory nature of the L63 Agreement, there is nothing in the Bankruptcy Code that prevents its rejection if real covenants do in fact exist."); *see also* **In re A.J. Lane & Co., Inc.**, 107 B.R. 435, 437–38 (Bankr. D. Mass. 1989) (allowing a debtor to reject an option to purchase real property when such option was itself an executory contract).

The Code tells us a chapter 11 debtor can reject *any* executory contract so long as the Court approves. § 365. And the Court is only to withhold approval of the chapter 11 debtor's decision if such decision is not in the best interest of the estate or constitutes bad business judgment. **Tempnology**, 587 U.S. at 374; **J. C. Penney**, 50 F.4th at 534.

10

"Rejection of contracts 'is vital to the basic purpose of a chapter 11 reorganization, because rejection can release the debtor's estate from burdensome obligations that can impede a successful reorganization." *F.E.R.C. v. Ultra Res., Inc. (In re Ultra Petroleum Corp.)*, 28 F.4th 629, 636 (5th Cir. 2022) (quoting *Mirant Corp.*, 378 F.3d at 517)). Some of those burdensome obligations may relate to above-market prices or unsustainable requirements provisions. *See generally* ***Delightful Music Ltd. v. James Taylor (Matter of Taylor)***, 913 F.2d 102 (3d Cir. 1990) (debtor had to produce a minimum number of albums); ***In re Monroe Well Service, Inc.***, 83 B.R. 317 (Bankr. E.D. Pa. 1988) (debtor had to purchase a minimum amount of electric power from a utility); ***In re Sharon Steel Corp.***, 79 B.R. 627 (Bankr. W.D. Pa. 1987 (same, but a gas utility), *aff'd*, ***Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.***, 872 F.2d 36 (3d Cir. 1989). Thus, unsustainable requirements provisions are just the kind of obligations Congress intended a debtor to be able to reject in order to successfully reorganize. *See* ***Frit-Lay, Inc. v. LTV Steel Co. (In re Chateaugay Corp.)***, 10 F.3d 944, 954–55 (2d Cir. 1993) ("The main purpose of Section 365 is to allow a debtor to reject executory contracts in order to relieve the estate of burdensome obligations.").

Rather than restricting a chapter 11 debtor's ability to reject a contract, Congress instead chose to outline the consequences such rejection would have. § 365(g); ***Bildisco***, 465 U.S. at 522–23. Section 365(g) says: "the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease." § 365(g).

Justice Kagan put it plainly:

> Section 365 provides a debtor like Tempnology with a powerful tool: Through rejection, the debtor can escape all of its future contract obligations, without having to pay much of anything in return. . . . But in allowing rejection of those contractual duties, Section 365 does not grant the debtor an exemption from all the burdens that generally applicable law—whether involving contracts or trademarks—imposes on property owners.

11

*Tempnology*, 587 U.S. at 386–87. The contract is not considered rescinded; but "the debtor's contractual counterparty [] retain[s] the same rights under § 365 in bankruptcy as it would have outside of bankruptcy." *Thornhill Bros. Fitness,* 85 F.4th at 326.; *see also* ***Gulfport Energy Corp. v. F.E.R.C.***, 41 F.4th 667, 672 (5th Cir. 2022) ("Breaching a contract does not erase that contract; it entitles the contract's counterparty to seek damages for the debtor's non-performance").

Therefore, a chapter 11 debtor may reject any executory contract and the consequences of that rejection are the same as if that debtor had breached the contract in a non-bankruptcy context. *E.g.*, ***Thornhill Bros. Fitness***, 85 F.4th at 326; *see also* ***Eastover Bank for Savings v. Sowashee Venture (Matter of Austin Dev. Co.)***, 19 F.3d 1077, 1083 (5th Cir. 1994) (saying a lessee/sublessor's rejection of a lease with the original lessor did not terminate the lease or the sublessee's rights to the lease); ***Chandrahas Agarwal, M.D. v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp., Inc.)***, 476 F.3d 665, 673 (9th Cir.2007) ("The rejection of an executory contract does not, however, otherwise affect the parties' substantive rights under the contract or state law.").

Judge Sontchi in ***Extraction Oil & Gas*** said: "Most courts that have held covenants running with the land cannot be rejected have found that the covenant was not an executory contract." 622 B.R. 608, 620–21 (Bankr. D. Del. 2020). This is not the same, however, as saying an executory contract which contains a covenant running with the land cannot be rejected. Judge Sontchi merely recognizes that most covenants running with the land are not executory and therefore not rejectable.

The question here is does the inclusion of a non-rejectable covenant running with the land insulate the otherwise executory GGA from rejection? Courts who have considered this question, have said an executory contract, such as this GGA, may be rejected even though it contains real

12

property covenants. *Southland Royalty Co.*, 623 B.R. at 73–74, 90–92; *In re Chesapeake Energy Corp.*, 622 B.R. 274, 281–82 (Bankr. S.D. Tex. 2020); *Occidental Petroleum Corp. v. Sanchez Energy Corp. (In re Sanchez Energy Corp.)*, 631 B.R. 847, 851, 859–60 (Bankr. S.D. Tex. 2021).

Here, § 365 allows Hilltop to sidestep its contractual obligations under the GGA owed to Monarch. Because the GGA is an executory contract, Hilltop may reject the entire GGA. Covenants which convey a real property interest do not limit Hilltop's authority or power to reject the GGA. Covenants which convey a real property interest do not make an executory contract rejection proof. Instead, if the GGA is executory, it may be rejected, and Hilltop must deal with the consequences of such rejection. Such consequences exist as a matter of bankruptcy law, not as a choice the debtor may make.

Once an executory contract is rejected and therefore breached, those rights and interests conferred to Monarch within the GGA remain and Monarch may seek any relief or remedy for damages caused by such breach. *See Mirant Corp.*, 378 F.3d at 520 ("When an executory contract is rejected in bankruptcy, the non-breaching party receives an unsecured claim against the bankruptcy estate for an amount equal to its damages from the breach."). Thus, Monarch retains any covenants running with the land post-rejection and may have an unsecured claim for any other damages caused by Hilltop's rejection and deemed breach.

### 2. "CONFLICTING" CASES

Hilltop points to *Chesapeake* and *Sanchez* for its proposition that the GGA can be executory and rejectable even though it contains covenants running with the land. *Chesapeake*, 622 B.R. at 281-82; *Sanchez*, 631 B.R. at 859-60; ECF No. 84 ¶¶ 37–38. Monarch counters with *Alta Mesa* and *Badlands* for its proposition that the presence of a real property agreement within the GGA makes that contract rejection-proof. *Alta Mesa Holdings, LP v. Kingfisher Midstream,*

13

*LLC (In re Alta Mesa Resources, Inc.)*, 613 B.R. 90, 96 (Bankr. S.D. Tex. 2019); *Monarch Midstream, LLC v. Badlands Prod. Co. (In re Badlands Energy, Inc.)*, 608 B.R. 854, 864–66 (Bankr. D. Colo. 2019); ECF No. 98 ¶¶ 62–75.

In *Badlands*, Judge Tyson considered a gas gathering agreement involving Monarch almost identical to the one in this case. 608 B.R. at 864–66. *Badlands* presentation and procedural history, however, differs from this case. The debtor/producer in *Badlands* moved to sell its leases free and clear of any interest under § 363(f). *Id.*, at 862–63. Judge Tyson granted limited approval of that sale and the buyer took the real property interest *without* assuming the gathering contracts. *Id.*, at 863. But Judge Tyson explicitly approved the sale subject to her determination of whether the gathering and compression agreements were covenants running with the land. *Id.* She later found the agreements were covenants running with the land under Utah law. *Id.*, at 875. And because "a covenant creates a property interest that is not extinguished through bankruptcy," the covenant could not be rejected. *Id.* (citing *Sabine Oil & Gas Corp. v. Nordheim Eagle Ford Gathering, LLC (In re Sabine Oil & Gas Corp.)*, 567 B.R. 869, 874 (S.D.N.Y 2017)). After analyzing § 363 Judge Tyson found that covenants "are a part of the bundle of sticks [the buyer] acquired when it purchased the real property." *Id.*, at 874. Thus, *Badlands* stands for the proposition that covenants running with the land remain with property sold in bankruptcy. It does not hold that covenants running with the land prevent a sale of the underlying property in bankruptcy—nor for the proposition that covenants running with the land in an executory contract prevent the rejection of that executory contract.

Next, Judge Isgur considered another gas gathering agreement with a dedication and easement from producer to gatherer. *Alta Mesa*, 613 B.R. at 96. Judge Isgur found the gas gathering agreement formed covenants running with the land. *Id.*, at 99–100, 107. Citing

14

***Badlands,*** Judge Isgur concluded that "[c]ontracts forming real property covenants are not executory," *id.*, at 99, and thus cannot be rejected. *Id.*, at 107. But as discussed earlier, ***Badlands*** did not say the agreements were not executory or could not be rejected. ***Badlands*** merely said the agreements contained covenants running with the land and those covenants remained with the land post-bankruptcy sale because the covenants are a real property interest that a bankruptcy sale cannot extinguish. Thus, ***Alta Mesa*** also holds only that covenants running with the land survive executory contract rejection.

Judge Jones waded into the conversation with ***Chesapeake***. *See generally* 622 B.R. 274. Judge Jones found the gas agreement at issue had no covenants running with the land and was an executory contract. *Id.*, at 284. That agreement included a dedication for gas produced from a well (personal property under Texas law) not gas in and under a well (real property under Texas law), and therefore did not create a covenant running with the land. *Id.*, at 278, 283; ***Cheapside Mins., Ltd v. Devon Energy Prod. Co.***, 94 F.4th 492, 498 (5th Cir. 2024) (quoting ***Phillips Petroleum Co. v. Adams***, 513 F.2d 355, 363 (5th Cir. 1975)). Judge Jones also opined on whether an agreement can include both executory contracts and covenants running with the land. ***Chesapeake***, 622 B.R. at 281–82. Mentioning the lack of a prohibition in the Code and the Supreme Court's decision in ***Tempnology***, Judge Jones concluded that executory contracts and covenants running with the land are not mutually exclusive. *Id.*, at 281. Thus, ***Chesapeake*** supports the proposition that an agreement can both be executory (and therefore rejectable) and contain covenants running with the land. *Id.*, at 281–82.

Finally, in ***Sanchez*** Judge Isgur revisited whether a gas gathering agreement which included covenants running with the land could be executory (and therefore rejectable) despite containing covenants running with the land. 631 B.R. at 851. The gas gathering agreements at

15

issue in *Sanchez* included a dedication of produced and unproduced gas and an easement and right-of-way . *Id.*, at 851–53. The court turned its attention to § 365 and the effect of rejection as reflected in *Tempnology*. *Id.*, at 859–60; *see also Tempnology*, 587 U.S. at 372 ("A rejection breaches a contract but does not rescind it. And that means all the rights that would ordinarily survive a contract breach, including those conveyed here, remain in place."). Consistent with *Tempnology*, Judge Isgur made two important statements that help clarify the issue:

(1) "Congress granted debtors the expansive right to reject *any* executory contract. The existence of a real property covenant does not limit the rejection power that Congress granted to debtors. If a contract is executory, a debtor may seek rejection." *Id.*, at 860 (citation omitted).

(2) "[P]ost-rejection, a counterparty retains those contract rights that would survive a breach under applicable non-bankruptcy law." *Id.*, at 859.

With these two powerful maxims, Judge Isgur concluded that because a party's breach of a contract that includes a covenant conveying a real property interest does not result in the property interest returning to the breaching party, a debtor's rejection of an executory contract does not reject any real property interests conveyed by covenants in the contract. *Id.*, at 860. Instead, the real property interest conveyed by the covenant survives rejection. *Id.*

Because the Code grants broad authority to chapter 11 debtors to reject any executory contract and because of the Supreme Court's *Tempnology* opinion, this Court agrees with the *Sanchez* Court that an executory contract, even if it contains covenants which convey real property interests, may be rejected, but the real property interests conveyed by covenants in an otherwise executory contract survive rejection of such contract.

e.  **BUSINESS JUDGMENT**

Having determined the GGA may be rejected with any covenants with the land remaining post-rejection, the Court next reviews Hilltop's request to reject the GGA under the business judgment standard. *J. C. Penney*, 50 F.4th at 534.

Hilltop's Chief Restructuring Officer, Erik White, testified that the GGA's current terms make Hilltop operate at a perpetual loss. Mr. White stated that Hilltop's inability to meet its minimum compression volume requirement of 10,000 Mcf per day, causes it to pay a penalty of "just shy of $550,000 per year." Mr. White said Hilltop is only producing about 3,500 Mcf per day. Mr. White testified that in his business judgement it does not make economic sense for Hilltop to continue operating at a loss under the GGA and therefore rejection is appropriate despite any breach of contract damages to which Monarch may be entitled—particularly since such damages will be treated as prepetition, unsecured claims*Mirant Corp.*, 378 F.3d at 520. Given Mr. White's testimony, the significant burden of the GGA on Hilltop, and the relative savings rejection appears to present to Hilltop, the Court cannot conclude Hilltop's decision to reject the GGA is clearly erroneous, speculative, or inconsistent with the Bankruptcy Code. *J. C. Penney*, 50 F.4th at 534. Thus, the Court grants Hilltop's *Rejection Motion*.

V.  **SETTING A BAR DATE FOR REJECTION CLAIMS**

Hilltop has asked this Court to establish a bar date for the filing of claims related to the rejection of executory contracts and unexpired leases. ECF No. 84 ¶¶ 48–50. Monarch's *Response* does not directly address this point.

Because calculation of Monarch's claim is dependent upon the outcome of Hilltop's declaratory judgment adversary proceeding, the Court will postpone determination of Monarch's

17

deadline to file a rejection claim until after the Court has entered a judgment in Adversary Proceeding No. 24-06015.

## VI. CONCLUSION

For the reasons stated above, the Court will grant the Debtor's *Motion*. It is, therefore,

**ORDERED** that the Debtor's *Motion to Reject Gas Gathering Agreement* (ECF No. 84) is **GRANTED.**

# # #